UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

GEORGE P. VELASQUEZ,                                         No. 12-10670-ta7

      Debtor.

GEORGE P. VELASQUEZ,

      Plaintiff,

v.                                                                   Adv. No. 14-01101 t

LOS ALAMOS NATIONAL BANK,

      Defendant.

## **MEMORANDUM OPINION**

      Before the Court are two motions for summary judgment, a Rule 56(d) motion, and a motion for additional time to conduct discovery. All relate to Defendant "jumping the gun" on stay relief almost three years ago, apparently because one of its lawyers did not know the Court's stay relief order was subject to a temporary stay. When the stay violation was called to the lawyer's attention, he fixed the problem within hours. The stay violation was litigated before a retired judge of this Court in 2012. He orally denied all relief, finding no intent to violate the stay and no damages.

      Plaintiff waited two years, retained counsel, and brought the identical claim before this Court, with no new evidence. For the reasons set forth below, Defendant is entitled to summary judgment on the damages issue, which disposes of the proceeding. Plaintiff's motions to conduct additional discovery will be denied, while his request that the Court consider his supplemented discovery responses in connection with summary judgment will be granted.

I. FACTS

There is no genuine dispute about the following facts:[1]

Los Alamos National Bank ("LANB") filed a foreclosure action against Plaintiff in New Mexico's First Judicial District Court, *Los Alamos National Bank v. George P. Velasquez, et. al.*, D101-CV-2011-02611 (the "Foreclosure Action"). The action dealt with a defaulted first mortgage on Plaintiff's house in Santa Fe, New Mexico. LANB obtained a default judgment of foreclosure and scheduled the property for sale.

Plaintiff filed this bankruptcy case *pro se* on February 24, 2012. On June 5, 2012, the Court (Judge Starzynski, ret.) entered an order granting LANB stay relief so LANB could complete the foreclosure sale (the "Stay Relief Order"). The Stay Relief Order did not waive the 14-day stay set forth in Fed.R.Bankr.P. 4001(a)(3).

On June 7, 2012, Debtor filed in the Foreclosure Action a motion to set aside LANB's default judgment.[2] LANB's lawyer Sandra Slattery (nka Sandra Brown) sent a June 13, 2012 letter to the state court judge:

> This letter is in regards to the Motion to Set Aside Default Judgement, filed by the Defendant on June 7, 2012. The Order Granting Relief from the stay imposed by Defendant's bankruptcy has not yet been entered, and therefore the motion is improperly filed. Counsel for Plaintiff does not consider the time for response to begin running until June 20, 2012, when it calculates that the stay will actually be lifted.

The judge docketed the letter on June 18, 2012.

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[2] Filing the motion appears to have violated the automatic stay. *See* § 362(a)(1), which stays "all entities" from continuing a judicial proceeding against the debtor. LANB never brought this stay violation before the Court.

On June 13, 2012 - five days before the stay was terminated - LANB's attorney Cody Lujan[3] filed three notices in the Foreclosure Action, including a notice of a rescheduled foreclosure sale. Rescheduling the sale violated the automatic stay.

This Court entered a discharge order and closed the bankruptcy case on June 18, 2012. The automatic stay therefore terminated on that date.

A week later, Plaintiff filed a "Motion to Re-Open Bankruptcy Case for Debtor, George Velasquez Case No. 7 12-10670 SS Due to a Violation of F.R.B.P. 4001(a)(3)." The motion asked, inter alia, that the Court punish LANB's stay violation by discharging the secured LANB debt and awarding Plaintiff $400,000 in punitive damages.

On June 26, 2012, at about 11:00 a.m., Plaintiff filed motions in the Foreclosure Action to set aside LANB's June 13 filings. Mr. Lujan responded promptly: 4½ hours later he filed a notice canceling the rescheduled sale.

This Court reopened the bankruptcy case and set a preliminary hearing on the alleged stay violation. At the preliminary hearing, held July 16, 2012, Judge Starzynski stated:

> "What happened was that rule 4001(a)(3) was violated by [the law firm] but as soon as they realized the problem, they fixed that immediately."

> "[The stay violation involved] literally someone in that law firm who didn't get the memo"

> "It was clear from [the law firm's] letter to Judge Singleton that the firm itself had no intention to violate the stay."

> "If I were to hear this matter on the merits . . . I would be really hard pressed to find a basis for assessing any damages whatever."

> "You were so thorough, Mr. Velasquez, in presenting this, I think that effectively I have everything I need in front of me to say that you could come in and testify

---

[3] Ms. Slattery and Mr. Lujan were at the same law firm, Rose C. Little & Associates, P.A., LANB's former counsel in this matter. Ms. Karen Bradley, mentioned below, was also an attorney with the law firm.

-3-

about all this and unless you have some evidence that said that Ms. Bradley's law firm, whoever that person was who filed that thing, did it intentionally for the purpose of hurting you or did it knowing it was a violation of the stay, whatever, unless you have some evidence to that effect, then you would not get a different result from what I am prepared to give you right now."

"I am going to enter an order saying two things; one, the relief you have asked for is denied without prejudice, which that means, for example, that you could go to the state court or whatever . . . ."[4]

In response to the Court's inquiry whether he had any evidence that Mr. Lujan intended to violate the automatic stay, Plaintiff responded "I don't know what the intention of opposing counsel is, or Los Alamos National Bank for that matter."[5]

The case was re-closed on October 16, 2012. There was no further activity until August 5, 2014, when the Plaintiff again sought to reopen the case and bring this adversary complaint. Plaintiff seeks compensatory damages, punitive damages, and attorney fees under § 362(k), alleging that LANB's violation of the automatic stay was "willful."

In an interrogatory, LANB asked Plaintiff to outline the emotional distress damages he claims to have suffered. In response, Plaintiff stated that "There are no medical records to disclose in relation to this claim."[6] LANB also asked Plaintiff to provide an accounting of all his damages. Plaintiff responded:

---

[4] The minutes of the hearing state that the motion was denied without prejudice, and Judge Starzynski uses "without prejudice" in his oral ruling. For what it is worth, it seems clear from the hearing record that Judge Starzynski intended to deny the motion with prejudice to refiling in this Court.

[5] For reasons unknown, Judge Starzynski did not enter a written order memorializing his oral ruling denying all relief to Plaintiff.

[6] Plaintiff now asks for permission to supplement this response as follows:
Plaintiff did not seek professional mediation advice regarding his emotional distress but sought various homeopathic remedies in an attempt to alleviate his distress that include fits of insomnia, anxiety, loss of appetite, depression, and a loss of self-confidence. Homeopathic remedies primarily consist of herbal remedies, primarily the ingestion teas and massage therapy which has been beneficial, however due to financial hardship these treatments are sporadic. Additionally, Plaintiff suffered from a hemorrhoids, which was treated by Dr. Jamie Gagen, in Los Alamos New Mexico, which upon information and believe is believed to be the result of Plaintiff's stress level at that point in time.

-4-

Defendant [sic] objects to this Interrogatory on the grounds that said Interrogatory is vague, is unduly burdensome, harassing, and overbroad as it seeks information beyond the scope of discovery as authorized under New Mexico Rules of Civil Procedure. Furthermore Plaintiff objects to this request as Defendant further asserts that any relief granted will be at the discretion of the court. To the Extent an Answer is required Defendant States the following:

George Velasquez
1600 Ben Hur Dr.
Santa Fe, NM 87501
Telephone: (505) 62-5159

Eric Ortiz Law
1122 Central Ave SW
Albuquerque, NM 87102
Telephone (505) 720-0070[7]

On February 24, 2015, LANB filed two motions for summary judgment, one on liability and the other on damages. Both motions have now been fully briefed.

The discovery period expired on April 20, 2015. That day, Plaintiff filed a Motion for Leave to Conduct Discovery, asking for more time to depose Ms. Slattery. LANB filed a written objection on April 29, 2015. Plaintiff previously scheduled a deposition of Ms. Slattery for

---

[7] Plaintiff now asks for permission to supplement this response as follows:
Plaintiff objects to this interrogatory because it is premature as any relief granted is at the discretion of the court, and Plaintiff reaffirms the objection to this Interrogatory on the grounds that said Interrogatory is value, unduly burdensome, harassing, and overbroad as it seeks information beyond the scope of discovery as authorized under New Mexico Rules of Civil Procedure. Plaintiff further objects pursuant to Rule 1-026(B) as this interrogatory seeks information that is protected by the attorney-client privilege and/or work product doctrine. To the Extent an Answer is required Defendant States the following:
George Velasquez
1600 Ben Hur Dr.
Santa Fe, NM 87501
Telephone: (505) 62-5159

Eric Ortiz Law
1122 Central Ave SW
Albuquerque, NM 87102
Telephone (505) 720-0070

March 20, 2015, which Defendant tried to quash. Plaintiff filed a notice vacating the deposition shortly thereafter.

## II. DISCUSSION

### A. Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56 applies in adversary proceedings. *See* Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F.Supp.2d 1209, 1231 (D.N.M. 2012) (citing *Celotex*). Further, and importantly in this case, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

To deny a motion for summary judgment, genuine fact issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

B. <u>Plaintiff's Request to Supplement Discovery</u>.

This case presents a somewhat unusual summary judgment scenario. Defendant has provided some evidence on liability and pointed to Plaintiff's lack of evidence on damages - an issue where Plaintiff has the burden of proof. Rather than presenting sufficient evidence to resist summary judgment, Defendant sought to conduct additional discovery and supplement his interrogatory responses. After the summary judgment motions were briefed, Defendant also filed a motion to extend the discovery period to depose Ms. Slattery.

Fed.R.Civ.P. 56(d) provides the mechanism for supplementing discovery on summary judgment. It states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

"The general principle of Rule 56(d) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). To invoke Rule 56(d)'s protections, the nonmovant must identify by affidavit "the probable facts not available and what steps have been taken to obtain these facts." *F.D.I.C. v. Arciero,* 741 F.3d 1111, 1116 (10th Cir. 2013). "The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Id.*

It is not entirely clear whether Rule 56(d) governs Plaintiff's request to supplement his interrogatory responses. The responses are verified and essentially function like affidavits. In any event, the Court concludes it is reasonable to allow Plaintiff to supplement the responses as proposed.

-7-

However, to the extent Plaintiff seeks additional time to conduct discovery on damages or to depose Ms. Slattery, his request is denied. Plaintiff has had ample opportunity to gather evidence on damages. Such evidence is generally within the debtor's control, and the alleged stay violation occurred three years ago. *See Jones v. Blanas,* 393 F.3d 918, 931 (9th Cir. 2004) (affirming denial of Rule 56(d) motion where the discoverable information was within appellant's control); *Uvalles v. Jacquez,* 2012 WL 4083320, *2 (N.D. Cal. 2012) ("Where a plaintiff requests information relating to facts within his control, any request for that discovery would be 'fruitless' and would not warrant a motion under Rule 56(d).").

Plaintiff has also failed to explain, by affidavit or otherwise,[8] how deposing Ms. Slattery would uncover facts precluding summary judgment. It is undisputed that Ms. Slattery was aware of the stay; her co-counsel was the one responsible for the improper filings. Further, any facts Plaintiff could uncover by deposing Ms. Slattery would generally go to liability. As explained below, that issue is moot in light of the Court's ruling on damages. The Court is therefore not convinced that allowing Plaintiff to depose Ms. Slattery would affect the disposition of summary judgment. *Lewis v. Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (Movant must "demonstrate a sufficient connection between the information he would seek in discovery and" the claims at issue because "Rule 56[(d)] is not a license for a fishing expedition….").

C. <u>Defendant is Not Entitled to Summary Judgment on Liability</u>

On summary judgment, Defendant seeks to establish that any stay violation was technical rather than "willful." Section 362(k)(1) provides:

> Except as provided in paragraph (2),[9] an individual injured by any willful violation of the automatic stay provided by this section shall recover actual

---

[8] Plaintiff did not submit a Rule 56(d) affidavit or declaration in connection with the request to depose Ms. Slattery.
[9] Paragraph (2) deals with repossession of certain types of personal property.

-8-

damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

"A debtor alleging a willful violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed and that the debtor suffered damage as a result of the violation." *In re Kline*, 424 B.R. 516, 524 (Bankr. D.N.M. 2010) (citations and quotation marks omitted).

For purposes of § 362(k), willfulness requires "that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required." *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007).

The undisputed facts show that after Defendant obtained a stay relief order, Mr. Lujan filed documents in the Foreclosure Action five days before the stay had actually terminated. As soon as Plaintiff sought to set the filings aside, Mr. Lujan promptly withdrew the amended sale notice. The most reasonable inferences from this evidence are that Mr. Lujan thought he could proceed with the Foreclosure Action because the Stay Relief Order had been entered, and that he was unaware of Fed.R.Bankr.P. 4001(a)(3)'s temporary stay.

Plaintiff's primary argument is that Mr. Lujan's ignorance of the stay is irrelevant. According to Plaintiff, LANB knew of the automatic stay because Ms. Bradley and Ms. Slattery knew of it. Since there is no question Mr. Lujan "intended" to file the amended sale notice, Plaintiff argues that the stay violation was willful under the *Johnson* test. That argument, which relies on agency principles, is not without merit. In general, clients are held accountable for the acts and omissions of their attorneys. *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 505 U.S. 380, 396 (1993). A creditor-principal is liable under § 362(k) for the acts of an agent (i.e., an attorney) who willfully violates the automatic stay when those acts are within the scope

-9-

of their principal-agent relationship. *In re Hafer*, 2013 WL 5925167, at *6 (Bankr. E.D. Va. 2013) (citing *In re Webb*, 472 B.R. 665, n. 4 (6th Cir. BAP 2012). Also, it generally is true that a corporation or other entity is charged with the knowledge of its agents. *See, e.g., W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.,* 427 F.3d 1269, 1276 (10th Cir. 2005) (a corporation is charged with the knowledge of its employees); *In re Thomason*, 493 B.R. 890, 898 (Bankr. N.D. Ga. 2013) (under general agency principles, knowledge of an agent can be imputed to the principal).

Under the circumstances of this case, it is not entirely clear whether the Tenth Circuit would find that LANB was responsible for Mr. Lujan's rogue filing. Given the Court's ruling on the damages issue, however (see below), the Court need not resolve whether the violation was "willful" for purposes of § 362(k).

D.  <u>Defendant is Entitled to Summary Judgment on Damages</u>.

Defendant also seeks summary judgment on the ground that Plaintiff lacks evidence of damages flowing from the stay violation.

Section 362(k) allows an individual debtor injured by a willful stay violation to recover "actual damages, including costs and attorney fees." Plaintiff has the burden of showing he suffered damage as a result of the stay violation. *U.S. Dept. of Agriculture v. Sexton,* 2015 WL 1477897, at *5 (W.D. Va. 2015); *In re Gallo,* 2012 WL 3930320, at *3 (M.D.N.C. 2012); *In re Kline,* 2011 WL 3879485, at *4 (Bankr. D.N.M. 2011), affirmed, 472 B.R. 98 (10th Cir. BAP 2012), affirmed, 514 Fed. Appx. 810 (10th Cir. 2013).

If a debtor does not sustain injury, no amounts are recoverable under § 362(k). *See, e.g., In re Adams*, 212 B.R. 703 (Bankr. D. Mass. 1997) (before damages can be awarded under §

-10-

362(k), debtor must show injury); *In re Still*, 117 B.R. 251, 254 (Bankr. E.D. Tex. 1990); *In re Whitt*, 79 B.R. 611 (Bankr. E.D. Pa. 1987).

Here, Defendant seeks actual damages for emotional distress, punitive damages, costs, and fees. Defendant presented the following testimony on summary judgment to evidence damages:

> Plaintiff did not seek professional mediation advice regarding his emotional distress but sought various homeopathic remedies in an attempt to alleviate his distress that include fits of insomnia, anxiety, loss of appetite, depression, and a loss of self-confidence. Homeopathic remedies primarily consist of herbal remedies, primarily the ingestion teas and massage therapy which has been beneficial, however due to financial hardship these treatments are sporadic. Additionally, Plaintiff suffered from a hemorrhoids, which was treated by Dr. Jamie Gagen, in Los Alamos New Mexico, which upon information and believe is believed to be the result of Plaintiff's stress level at that point in time.[10]

    1.    <u>Emotional Distress Damages</u>. Several circuit courts have held that emotional distress damages are "actual damages" within the meaning of § 362(k). *See, e.g., Snowden v. Check into Cash of Washington Inc. (In re Snowden)*, 769 F.3d 651, 656-57 (9th Cir. 2014) (§ 362(k) permits an award of emotional distress damages if the debtor suffers significant harm, clearly establishes the significant harm, and demonstrates a causal connection between that significant harm and the violation of the automatic stay); *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014) (same). *Fleet Mortg. Group, Inc. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999) (same).

In *Aiello v. Providian Financial Corp,* 239 F.3d 876, 880 (7th Cir. 2001), the Seventh Circuit held that emotional distress damages may only be recovered if they are incidental to a claim for financial loss. The court was skeptical that Congress intended to include emotion

---

[10] The other supplemental interrogatory responses do not include evidence regarding damages. They merely state that the interrogatory is vague, burdensome, etc. and provide the names of Plaintiff's counsel.

-11-

distress damages as part of § 362(k), saying "The Bankruptcy Code was not drafted with reference to the emotional incidents of bankruptcy, however, and bankruptcy judges are not selected with reference to their likely ability to evaluate claims of emotional injury." 239 F.3d at 880.

The Fifth Circuit cited *Aiello* with approval in *In re Repine,* 536 F.3d 512 (5th Cir. 2008), holding that a debtor must, at a minimum, set forth "specific information" concerning the damages caused by his emotional distress rather than relying only on "generalized assertions." 536 F.3d at 521. Because the debtor failed to provide the needed specific information, the court did not decide whether to follow *Aiello*.

The Tenth Circuit has not ruled on the issue. Lower court decisions in the Tenth Circuit have emphasized the need for specific evidence of emotional distress damages. *See, e.g., In re Trujillo*, 485 B.R. 238, 254 (Bankr. D. Colo. 2012) (fleeting and unsubstantiated emotional distress is not compensable); *In re Diviney,* 211 B.R. 951, 967 (Bankr. N.D. Okla. 1997), affirmed, 225 B.R. 762 (10th Cir. BAP 1998) (emotional distress damages denied because of a lack of evidence).

The Court holds that, at a minimum, Plaintiff is required to set forth "specific information" concerning the alleged emotional distress damages, and cannot rely only on "generalized assertions." Plaintiff's initial and proposed amended interrogatory responses fall short of the kind of information required, even to demonstrate a genuine fact issue. More importantly, even if the responses did evidence some emotional distress, Plaintiff has presented no evidence that such distress was caused by the fact that Mr. Lujan filed papers in the Foreclosure Action five days sooner than he was otherwise entitled. Plaintiff himself believed

-12-

Case 14-01101-t    Doc 32    Filed 05/11/15    Entered 05/11/15 11:39:10 Page 12 of 15

the stay terminated upon entry of the Stay Relief Order, as he started filing papers in the state court immediately thereafter.

The Court also notes that Defendant's premature filing actually benefitted Plaintiff. Defendant cancelled the foreclosure sale when it discovered the stay violation, thereby restarting the clock and allowing Plaintiff more time to stay in the home. Defendant is therefore entitled to summary judgment that Plaintiff suffered no compensable emotional distress damages.

2. <u>Other Consequential Damages</u>. Plaintiff provided no evidence whatsoever of other compensatory damages. Defendant is entitled to summary judgment that Plaintiff suffered no such damages.

3. <u>Attorney Fees</u>. Plaintiff did not need to incur attorney fees to stop the stay violation because Defendant withdrew the amended notice of sale as soon as its counsel received Plaintiff's motions filed in the Foreclosure Action. Further, by the time Plaintiff discovered that (both he and) Defendant had violated the stay, it was already terminated and the parties were free to proceed. Given these facts, no attorney fees can be awarded. *See, e.g., Lovett v. Honeywell, Inc.*, 930 F.2d 625, 629 (8th Cir. 1991) (court can only award attorney's fees and costs under § 362(k) after the debtor has proved it suffered other actual damages); *Whitt v. Philadelphia Hous. Auth.*, 79 B.R. 611, 616 (Bankr. E.D. Pa. 1987) ("costs and attorneys' fees . . . . are allowable only to embellish 'actual damages'"); *In re Hutchings,* 348 B.R. 847 (Bankr. N.D. Ala. 2006) (citing and following *Lovett* and collecting a large number of cases holding that a debtor who was not injured by the stay violation cannot recover costs or attorney fees).[11]

---

[11] *See also In re Robinson*, 228 B.R. 75 (Bankr. E.D.N.Y. 1998) ("The policy of section 362[k], to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation.") (citations omitted); *In re Miller,* 447 B.R. 425, 435 (Bankr. E.D. Pa. 2011) (when creditor stopped violating automatic stay on its own accord yet debtor brought a § 362(k) action five months later, court denied debtor's all relief,

4. <u>Punitive Damages</u>. In "appropriate circumstances" punitive damages may be awarded. Assessing punitive damages usually requires more than mere willful violation of the automatic stay. *Johnson*, 501 F.3d at 1171 (quoting *Green Tree Servicing, LLC v. Taylor,* 369 B.R. 282, 289 (S.D. W. Va. 2007). This is not a punitive damages case. Nothing Plaintiff has offered in the way of evidence or argument suggests that a punitive damage award is merited. All of Defendant's evidence suggests the opposite. Defendant is entitled to summary judgment that no punitive damages should be awarded.

### III. CONCLUSION

This Court is as anxious as any bankruptcy court to protect debtors from willful stay violations. *See, e.g., In re Juan Escobedo*, 513 B.R. 605 (Bankr. D.N.M. 2014), and *In re Seigfried,* 2014 WL 7240071 (Bankr. D.N.M. 2014). On the other hand, the Court has no interest in punishing creditors for innocent stay violations that caused no harm and were fixed promptly. This is a court of fair play and substantial justice, not a "gotcha" forum.

The Court will grant summary judgment in Defendant's favor on all claims asserted in this adversary proceeding, will grant Plaintiff's motion to supplement its interrogatory responses, and will deny Plaintiff's motion to conduct additional discovery. Separate judgment and orders will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 11, 2015

---

saying that "Debtors were litigating something that did not need litigating. No attorneys' fees were necessary; no attorneys' fees are reasonable").

Copies to:

Eric Nicholas Ortiz
1122 Central Ave. SW
Albuquerque, NM 87102

Duncan Scott
P.O. Box 587
Albuquerque, NM 87103